STATE of Minnesota, Petitioner,
Appellant,

v.

Billy Jim KROTZER, Respondent.

No. C4–94–2604.

Supreme Court of Minnesota.

May 23, 1996.

Paul Scoggin, Special Asst. Carver County Atty., Chaska, Hubert H. Humphrey III, Attorney General, St. Paul, for Appellant.

Susan Andrews, Asst. State Public Defender, St. Paul, for Respondent.

OPINION

KEITH, Chief Justice.

The State of Minnesota requests review of a court of appeals decision upholding a Carver County District Court's stay of adjudication of criminal charges against Billy Jim Krotzer. Because we agree with Krotzer that the power to stay adjudication of Krotzer's case was within the district court's inherent judicial authority, we affirm. However, we reverse that portion of the court of appeals' opinion addressing the propriety of Krotzer's probation order, and hold that the trial court could require Krotzer to serve a term of incarceration as a condition of his probation.

## I.

The facts of this case are undisputed. On three occasions in December 1993 and January 1994, Billy Jim Krotzer, aged 19 years, and his 14–year–old girlfriend, C.H.M., engaged in consensual sexual intercourse. Krotzer admits that he knew that C.H.M. was approximately 14 or 15 years old, but claims that he was "not sure" whether his actions were illegal. The couple ended their sexual relationship after C.H.M.'s mother, T.J.M., learned of their sexual activities, but they continued a nonsexual relationship with T.J.M.'s approval after she set forth strict dating guidelines.

Despite the parties' amicable resolution of the situation, an unnamed person notified the Chaska Police Department of the past sexual contact between Krotzer and C.H.M. A Chaska police detective interviewed all three individuals in May 1994, and both Krotzer and C.H.M. disclosed the extent of their past sexual relationship to the detective. According to T.J.M., the detective assured them that there was "nothing to worry about."

Despite this assurance, the Carver County Attorney's Office charged Krotzer with one count of third-degree criminal sexual conduct pursuant to Minn.Stat. § 609.344, subd. 1(b) (1994). Unable to reach a plea agreement with the county prosecutor, Krotzer entered a guilty plea on July 28, 1994 but requested the court to stay adjudication of his criminal charge. The court did not formally accept Krotzer's plea, but ordered a presentence investigation, and informed Krotzer that if "this matter does not conclude as we expect it will, then you have a right to withdraw the plea and the State would then have to prove the case and you would be entitled to a jury trial." The Department of Corrections performed the presentence investigation, and recommended that Krotzer "be placed on District Court probation for 0—5 years with a stay of adjudication. If a stay of imposition of sentence is pronounced, the law would require that this individual be registered as a predatory sex offender. This would not appear to be appropriate in this case because there is no history of aggressiveness, or any aggressiveness in the present offense." [1]

At sentencing on September 30, 1994, the Carver County prosecutor voiced his opposition to the district court's intention to stay adjudication of Krotzer's charge: "We challenge [Krotzer's trial attorney] to cite any legal authority to support the Court granting a stay of adjudication over the State's objection." The prosecutor urged the court to accept Krotzer's guilty plea and follow the presumptive sentence under the Sentencing Guidelines: a stay of imposition of Krotzer's sentence.[2] Although entering a guilty plea to third-degree criminal sexual conduct would cause Krotzer to be convicted of a felony, the felony would revert to a misdemeanor under Minn.Stat. § 609.13, subd. 1(2) (1994) if Krotzer successfully served his probationary term. Nevertheless, the court, without accepting Krotzer's guilty plea, stayed adjudication of his charge and placed Krotzer on probation for 60 months. As conditions of his probation, Krotzer was ordered to serve 60 days in jail, pay $200 to the public defender's fund and $415 in fines and surcharges, and have no unsupervised contact with any other female adolescents under the age of 16. The district court judge expressed his uncertainty as to the propriety of his sentencing decision, and invited the State to appeal "so maybe we'll get a decision on this and then we'll all know where we're going [but] I believe that in the context of this case, I have the authority to stay adjudication."

---

1. If Krotzer were convicted of criminal sexual conduct, he would have been required to register with corrections and law enforcement authorities each time he changed residences for ten years, and provide a statement of his offense, a fingerprint card and photograph to those authorities, or face gross misdemeanor charges for failure to register. *See* Minn.Stat. § 243.166 (1994).

2. It is worthwhile to note the opposition of T.J.M. and her mother to Krotzer's prosecution. In a letter to the court dated July 26, 1994, T.J.M. stated that she did not want Krotzer's case to go forward, and requested that the court "let it end" without further legal action. She also expressed her belief that Krotzer and her daughter were "good kids" who had "made a mistake [and] then learned a lesson." When T.J.M. and C.H.M. attended Krotzer's sentencing hearing, T.J.M. told the court that she had "given my blessing to this relationship" in order to preserve her good relationship with her daughter.

The State did appeal the district court's order, arguing that there is no statutory justification or equal authority for the district court's action in Krotzer's case, and that the court violated separation of powers principles by overriding the prosecutor's charging decision. The State asserted that the district court had exercised exclusively legislative and executive powers by manufacturing a punishment for Krotzer's crime and by preventing prosecution of the felony charge. The court of appeals disagreed, and held that because a district court has the power to dismiss criminal charges at any time "in furtherance of justice," the court can also stay the adjudication of a charge, an action less severe than outright dismissal. *State v. Krotzer*, 531 N.W.2d 862, 865 (Minn.App. 1995). *See* Minn.Stat. § 631.21 (1994). The court of appeals also rejected the State's separation of powers argument, stating that the "prosecution can recommend a sentence, but it cannot force the court to impose a sentence from a list the prosecution wants. Trial judges, not the prosecution, pronounce sentences." *Id.* at 866 (citing *State v. Olson*, 325 N.W.2d 13, 18 (Minn.1982)).

## II.

■ The State argues that the district court violated separation of powers principles. Specifically, the State maintains that the court's stay of adjudication amounted to the exercise of a power solely reserved to the executive branch under Article III, Section 1 of the Minnesota Constitution: the power to decide whom to prosecute and what charge to file. *See State v. Carriere*, 290 N.W.2d 618, 620 n. 3 (Minn.1980). *See also Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978) (decision whether or not to prosecute generally rests entirely with prosecutor); *State v. Herme*, 298 N.W.2d 454, 455 (Minn.1980). Under established separation of powers rules, absent evidence of selective or discriminatory prosecutorial intent, or an abuse of prosecu-

torial discretion, the judiciary is powerless to interfere with the prosecutor's charging authority. *Bordenkircher*, 434 U.S. at 364, 98 S.Ct. at 668–69 (citing *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 505–506, 7 L.Ed.2d 446 (1962)).

■ However, the prosecutor's power to file charges and prosecute an individual was not infringed upon here. As Krotzer states, the Carver County prosecutor investigated the allegations against Krotzer, filed criminal charges, obtained a guilty plea, and recommended a disposition and sentence to the court. The trial court then postponed acceptance of the plea and placed Krotzer on probation, but this did not affect the prosecutor's carefully defined role. *See Olson*, 325 N.W.2d at 18. The final disposition of a criminal case is ultimately a matter for the presiding judge. As we stated in *Olson*, once the legislature has defined the range of punishments for a particular offense, it cannot "condition the imposition of the sentence by the court upon the prior approval of the prosecutor." *Id. See People v. Superior Court of San Mateo County*, 11 Cal.3d 59, 113 Cal.Rptr. 21, 26, 520 P.2d 405, 410 (1974) (prosecutor may not "veto" trial judge's decision to divert defendant into pretrial treatment program because "disposition is a function of the judicial power no matter what the outcome").

We therefore affirm the court of appeals' decision in this case. The district court's determination that Krotzer's situation warranted unusual judicial measures is well-supported by the special circumstances of Krotzer's case. It appears that the court strongly disagreed with the prosecutor's decision to file charges against Krotzer, and felt that justice would not be served by giving Krotzer a criminal record as a predatory sex offender. Although the court did not act pursuant to any express Minnesota rule or statute,[3] its decision to stay adjudication

---

**3.** We note that no Minnesota statute or rule of court expressly permits a district court to stay adjudication of criminal charges over the prosecution's objection in situations like Krotzer's. While Minn.Stat. § 152.18 (1994) permits a court to stay adjudication and place the defendant on probation in certain minor drug offenses, we

recognize that this statute does not apply to Krotzer's criminal sexual conduct charge. Furthermore, a stay of adjudication is not among the available sentences for felony convictions listed in Minn.Stat. § 609.10 (1994). *See also* Minn. Stat. § 609.095 (1994). Nor is a stay of adjudication provided for under Minn.Stat. § 609.135

of Krotzer's charge instead of accepting his guilty plea fell within the "inherent judicial power" we have repeatedly recognized, and was necessary to the furtherance of justice in Krotzer's case. *See State v. C.A.*, 304 N.W.2d 353, 358 (Minn.1981); *State v. Osterloh*, 275 N.W.2d 578, 580 (Minn.1978); *Clerk of Court's Compensation for Lyon County v. Lyon County Comm'rs*, 308 Minn. 172, 180, 241 N.W.2d 781, 786 (1976); *City of St. Paul v. Landreville*, 301 Minn. 43, 47, 221 N.W.2d 532, 534 (1974).

In addition, as the court of appeals noted, the action undertaken by the district court in this case was akin to the dismissal "in furtherance of justice" permitted by Minn.Stat. § 631.21 (1994).[4] Under this statute, the power to dismiss criminal charges lies within the judiciary's authority to control the administration of justice. *See, e.g., State v. Fleck*, 269 N.W.2d 736, 737 (Minn.1978) (interests of justice were not served by trial court's dismissal of incest charges under section 631.21); *In re Welfare of J.H.C.*, 384 N.W.2d 599, 601 (Minn.App.1986) (trial court order dismissed juvenile court petition "in the furtherance of justice").

For example, in *City of St. Paul v. Landreville*, we ruled that a municipal court judge had the discretion to continue a criminal assault complaint for dismissal, despite opposition from the city attorney. 301 Minn. at 44, 221 N.W.2d at 533. On appeal from the municipal court's order dismissing the complaint, the City of St. Paul asserted that the judge had no such inherent power. Rejecting the city's argument, this court held: "we cannot agree * * * that the court has no inherent power to dismiss a criminal complaint over the objection of the prosecution except where provided for by statute or to protect specific constitutional rights. In-

stead, the court has the inherent power to dismiss a case in the interest or furtherance of justice, whether that power is expressly conferred by statute or arises by implication." 301 Minn. at 47, 221 N.W.2d at 534 (footnote omitted).

Rather than dismiss the charges against Krotzer entirely pursuant to section 631.21, the district court chose a course of action short of dismissal: a stay of adjudication of those charges and the imposition of a probationary period. While dismissing the complaint under section 631.21 might have avoided the need for a stay of adjudication, the prosecutor would have been free to reinstate identical criminal charges against Krotzer. *Fleck*, 269 N.W.2d at 737 (state cannot appeal from order to dismiss under section 631.21, but can reissue complaint); *City of St. Paul v. Halvorson*, 301 Minn. 48, 221 N.W.2d 535, 537–38 (1974) (dismissal under section 631.21 is not appealable, but is not "with prejudice," leaving prosecutor free to file new complaint). In order to avoid this dilemma, the district court stayed adjudication of the criminal sexual conduct charge, the only option within its inherent judicial power. Ideally, the judge, prosecutor and defense attorney should have reached some compromise in the form of a plea agreement. But as we stated above, this stay of adjudication was within the court's power, and was necessary to the "furtherance of justice" under the facts of Krotzer's case.

### III.

■ However, we disagree with the court of appeals' conclusion that the district court could not require Krotzer to serve a term of incarceration as a condition of his probation. *Krotzer*, 531 N.W.2d at 866–67. There is no caselaw that directly controls this issue.

(1995) which permits a court to stay imposition or execution of a sentence under certain circumstances. However, because the district court in this case never formally accepted Krotzer's guilty plea, these sentencing provisions do not control Krotzer's case, nor has the district court improperly created a new form of postconviction "punishment," as the State claims.

4. Section 631.21 states:
> The court may order a criminal action, whether prosecuted upon indictment or com-

plaint, to be dismissed. The court may order dismissal of an action either on its own motion or upon motion of the prosecuting attorney and in furtherance of justice. If the court dismisses an action, the reasons for the dismissal must be set forth in the order and entered upon the minutes. The recommendations of the prosecuting officer in reference to dismissal, with reasons for dismissal, must be stated in writing and filed as a public record with the official files of the case.

Nonetheless, we note that the only provision that explicitly contemplates a stay of adjudication as a means of deferring further criminal proceedings against a defendant, section 152.18, does permit a district court to "place the person on probation *upon such reasonable conditions as it may require and for a period, not to exceed the maximum sentence provided for the violation.*" Minn.Stat. § 152.18, subd. 1 (1994) (emphasis added). We further note that it is standard practice among judges to order defendants to serve a jail term of less than one year as a "condition" of their probationary term under section 152.18. *See e.g., State v. Ender,* 467 N.W.2d 39, 40 (Minn.App.1991) (defendant diverted from prosecution pursuant to section 152.18 was ordered to serve 30 days in jail as a condition of his three year probationary term). The district court may have considered the provisions of section 152.18 when it placed Krotzer on probation and ordered several conditions of probation, including a jail term. We therefore hold that it was not improper for the district court in this case to follow the sentencing options permitted by section 152.18, and to order Krotzer to serve 60 days in jail as a condition of his 60 months on probation.

Affirmed in part, reversed in part.

COYNE, Justice (dissenting).

I respectfully dissent. This case is a "hard case" in which, consistent with the old adage, this court is making "bad law."

What has come to be popularly known as "statutory rape" has been considered a crime ever since the 13th century.[1] The crime is based on recognition of the fact that young girls and boys lack both the judgment and the understanding of the possible long-term consequences of their actions so that they are incapable of giving meaningful consent to sexual intercourse. That the erosion of the deep shame and embarrassment formerly associated with out-of-wedlock pregnancies of young girls may have resulted in somewhat sporadic enforcement does not make the crime any less a crime.[2]

Nevertheless, I have no quarrel with the impulse on the majority's part to try to do something to prevent the defendant from being labeled a "felon" and a "predatory offender." Indeed, I will go so far as to say that I cannot understand, on this record, why the prosecutor did not decide to "divert" this case or why he refused to agree to diversion when it became clear that that was what the trial court wanted. However, while it may be that as a matter of *policy* the trial court in appropriate cases *ought* to have the broad power to order diversion over the prosecutor's objection, under the separation-of-powers doctrine, as I understand it, the trial court does *not* have power to order diversion over the prosecutor's objection. Neither, for that matter, is there any statutory authority supporting the trial court's action. Invoking a court's "inherent judicial authority" to obtain a result that this court likes in this case is tantamount to saying that a court can do anything it wants to do. This court is not a law unto itself and if it expects the other branches of government to defer, when appropriate, to judicial power, it in turn should defer, when appropriate, to executive power or legislative power.

At common law the executive branch had the exclusive power to initiate and discontinue a criminal prosecution. As a general proposition, that is also the case under the separation-of-powers doctrine.[3] The Minne-

---

1. Statute of Westminster I, 3 Edward I chapter 13.

2. The majority comments that "[d]espite the parties' amicable resolution of the situation, an unnamed person notified the Chaska Police Department of the past sexual contact between Krotzer and C.H.M." It should be noted, I think, that a violation of Minn.Stat. § 609.344, to which Krotzer pled guilty constitutes "sexual abuse" which certain persons, including physicians, teachers, and school counselors, are statutorily mandated to report to a law enforcement or welfare agency. Minn.Stat. § 626.556 (1994).

3. In *United States v. Cox,* 342 F.2d 167, 171 (5th Cir.1965), *cert. denied, sub nom. Cox v. Hauberg,* 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965), the United States Court of Appeals had this to say about the prosecutor's power to control criminal prosecutions:

   Although as a member of the bar, the attorney for the United States is an officer of the court, he is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case. It follows, as

sota Constitution, like the United States Constitution, divides the powers of government among the legislative, executive and judicial branches. Minn. Const. art. III, § 1. In the criminal context, the legislature possesses the power to define the conduct that constitutes a criminal offense and to fix the limits of punishment for such conduct. *State v. Olson*, 325 N.W.2d 13, 17–18 (Minn.1982). While the imposition of the sentence within the limits prescribed by the legislature is a purely judicial function, *id.*, the court has been given some authority by statute, section 631.21, to dismiss prosecutions "in furtherance of justice" either on its own motion or upon motion of the prosecutor. The trial court must set forth its reasons in the order, and the prosecutor's recommendations must be stated in writing and placed in the court's public file for the case. Generally, however, the trial court may not dismiss prosecutions over the objection of the prosecutor if the prosecutor has sufficient evidence to go forward.

The majority relies in large measure on *dictum* found in *Olson*, 325 N.W.2d at 18–19. The issue in *Olson* was whether the legislature could condition the trial court's decision to sentence a convicted defendant without regard to a statutory mandatory minimum term on approval by the prosecution. In concluding that the legislature could not so condition the trial court's sentencing decision, this court relied in part upon some California decisions, one of which, *People v. Superior Court of San Mateo County*, 11 Cal.3d 59, 113 Cal.Rptr. 21, 520 P.2d 405 (1974), arose out of a statutory pretrial diversion program for first time drug offenders found suitable for treatment and rehabilitation. *Id.* at 407 (citing Cal. Pen.Code §§ 1000–1000.4 (West 1972)). The California statute provides that when a defendant is

charged with one of six specified drug offenses, the prosecutor is required to determine if the defendant also meets certain minimum standards of eligibility. If it appears the defendant is eligible for diversion and if the defendant consents and waives his right to a speedy trial, the matter is assigned to the probation department for development of the facts bearing on the defendant's suitability for diversion. The probation department's findings and recommendations are submitted to the court. Then the statute mandates that the court hold a hearing to determine whether "the defendant should be diverted and referred for education, treatment, or rehabilitation." *Id.* at 408. If the defendant is convicted of any offense during the period of diversion, criminal proceedings in the diverted case are resumed; but if the defendant successfully completes the diversion program, the charges are dismissed. *Id.* at 407–08.

The problem with the California statute was that after requiring a formal diversion hearing and directing the trial court to weigh the materiality, relevance, credibility and persuasiveness of the evidence and to decide whether the defendant would benefit from diversion into a program of treatment, education, and rehabilitation, the statute subjected the court's decision to prosecutorial veto. The California Supreme Court ruled that once the case reached the hearing mandated by Cal. Pen.Code § 1000.2, the case was "before the court" for disposition and that a court hearing need not be a full-fledged criminal trial in order to constitute an exercise of the judicial power. *Id.* at 410. The statute vested in the court—not the prosecutor—the power to find the operative facts and to draw legal conclusions and to decide if the defen-

---

an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions.

In *State v. Herme*, 298 N.W.2d 454, 455 (Minn. 1980), we said:

Necessarily, prosecutors must have considerable discretion in the charging decision. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978); *State v. Andrews*, 282 Minn. 386, 165 N.W.2d

528 (1969); ABA Standards on the Prosecution Function § 3.9 (1971). As a general rule, the prosecutor's decision whom to prosecute and what charge to file is a discretionary matter which is not subject to judicial review absent proof by defendant of deliberate discrimination based on some unjustifiable standard such as race, sex, or religion. *See Bordenkircher v. Hayes*, 434 U.S. at 364–65, 98 S.Ct. at 668–69; *City of Minneapolis v. Buschette*, 307 Minn. 60, 64–65, 240 N.W.2d 500, 503 (1976); *State v. Andrews*, 282 Minn. at 392, 165 N.W.2d at 532.

dant should be diverted into the statutory program.

The California court's careful description of the statutory procedure and its stated view of diversion as a specialized form of probation makes it quite clear it looked on that exercise of the prosecutorial veto after hearing, argument, and decision by the court as interference with the court's power and duty to sentence and, hence, a violation of the separation of powers.

*State v. Olson*, 325 N.W.2d 13 (Minn.1982), on the other hand, arose out of the imposition of sentence following conviction of a crime committed with a firearm. The trial court stayed execution of a prison term of 54 months and placed the defendant on probation despite a statute requiring a minimum term of 3 years' imprisonment. Minn.Stat. § 609.11 (Supp.1981). Subdivision 8 of the statute set out a procedure for avoiding the mandatory minimum term but provided that the procedure be initiated by the prosecutor. Citing a Louisiana decision that giving the prosecutor a discretionary role in sentencing violated the constitutional separation of powers, *State v. LeCompte*, 406 So.2d 1300, 1311 (La.1981), the *Olson* court declared that subdivision 8 was not intended to enlarge the powers of the prosecutor, but rather to provide a safety valve in cases where a minimum sentence was not warranted by the circumstances. 325 N.W.2d at 18–19.

But although dictum in *Olson* may provide some limited support for the majority's position, it seems to me there is a significant difference between the separation-of-powers issue posed by a statutory framework as in *Olson* and *San Mateo County* and the separation-of-powers issue posed by a judicially created ad hoc pretrial sentencing as in the present case. In *Olson* the court ruled that requiring prosecutorial approval before the court could exercise its power to make a post-conviction sentencing decision which the legislature had vested in the judiciary violated the separation-of-powers doctrine, and similarly *San Mateo County* held that giving a prosecutor power to veto diversion after a hearing and judicial determination that the defendant meets the statutory criteria for diversion violated constitutional principles of separation of powers. In the present case, on the other hand, this court declares that a court possesses inherent judicial power to usurp the county attorney's discretion by staying prosecution and creating a diversion for which there is neither statutory authority nor precedent.

Moreover, the rationale underlying our decision in *State v. Carriere*, 290 N.W.2d 618 (Minn.1980), strongly suggests that the prosecutor has the power under the separation-of-powers doctrine to veto any stay of prosecution and the diversion of the defendant into a treatment program. In *Carriere* the issue was whether accepting a straight guilty plea by a defendant charged with first-degree murder to the lesser offense of second-degree murder over the prosecutor's objection violates the separation-of-powers doctrine. The defendant there based his argument on Minn. R.Crim. P. 15.07, giving the trial court authority to accept a defendant's guilty plea to a lesser included offense or an offense of lesser degree without the prosecutor's consent. This court, in order to "eliminate the danger of judicial intrusion into an area reserved for prosecutorial discretion," held that notwithstanding the rule, the trial court generally may not accept a guilty plea to a lesser included offense over the objection of the prosecutor if the prosecutor has sufficient evidence to go forward on the charged offense. *Id.* at 620. We said, in relevant part:

The district court is part of the judicial department. The prosecutor is an executive official. The prosecutor argues that if the trial court were to accept defendant's plea the trial court would, in effect, be ordering the prosecutor not to prosecute the first-degree murder charge against defendant. This, the prosecutor contends, would constitute an encroachment by the judiciary upon the executive function of charging offenses.

Defendant argues that in this case, where the charge is by grand jury indictment, the trial court's acceptance of a plea of guilty to a lesser included offense would raise no issue with respect to the doctrine of separation of powers because the grand jury is part of the judicial department. Although the grand jury is an agency of

the court [citation omitted], the court's supervisory powers do not include the power to substitute its own determination of the crime to be charged for that of the grand jury. An indictment represents the grand jury's decision that there is probable cause to believe that an offense has been committed and that the defendant committed it. [Citation omitted]. The court is authorized to grant a motion to dismiss an indictment for lack of probable cause only if "[t]he evidence admissible before the grand jury was not sufficient * * * to establish the offense charged or any lesser or other included offense or any offense of a lesser degree." Rule 17.06, subd. 2(1)(a). When an indictment has been found by the grand jury, it is the county attorney's duty to "prosecute the same to a final determination in the district court." [Citation omitted]. The prosecutor is generally accorded great discretion in determining the manner in which to fulfill his duty to prosecute. [Citations omitted]. The decision whether to seek a conviction of the crime charged in an indictment or engage in plea negotiations is in most instances left to the prosecutor's discretion. [Citation omitted]. The fact that the grand jury is administered within the judicial department thus does not weaken the prosecutor's argument that the trial court, in accepting defendant's plea of guilty to a lesser included offense without the prosecutor's consent, would be exercising a power properly belonging to the prosecutor as an executive official.

*Id.* at 620, n. 3.

The majority relies on this court's decision in *City of St. Paul v. Landreville*, 301 Minn. 43, 47, 221 N.W.2d 532, 534 (1974), in arguing that the trial court has inherent authority to divert a prosecution over the prosecutor's objection. In *Landreville* we refused to review a dismissal of a criminal prosecution on the trial court's own motion and over the prosecutor's objection. This court took the position that the trial court, even in the absence of the authority given by section 631.21, has the inherent authority on its own motion to dismiss a prosecution before trial "in furtherance of justice." This court also indicated that such a dismissal was not ap-

pealable by the state because it did not *necessarily* defeat further prosecution because jeopardy attaches only when the jury is sworn or trial commences and the prosecutor therefore is not barred from refiling the charges if necessary and proper. This court added:

> [W]e do not attempt to curtail the discretion of the prosecutor to pursue other adequate avenues of procedure. To rule otherwise may well discourage the prosecutor from using his discretion in establishing or utilizing the type of successful pretrial intervention programs being used throughout the country as alternate methods of disposition. Rather, we would commend any concerted action between the court and the prosecutor to reach a desired end.

301 Minn. at 47, 221 N.W.2d at 534.

There is a tendency in dealing with separation-of-powers issues to take an either/or approach. That is the approach that this court in effect has taken in declaring that the trial court has the inherent authority to "go it alone" on the issue of pretrial diversion. While the arguments are strong that the prosecutor in this case perhaps should not have filed the charge in the first place and that it might have been prudent for the prosecutor to agree to the diversion requested by the trial court, I do not think that the trial court had the power or the authority to order the diversion over the prosecutor's objection.

My understanding is that in most jurisdictions the diversion programs give a very limited role to the judiciary, not the broad power to order diversion over the prosecutor's objections. Note, *Pretrial Diversion from the Criminal Process*, 83 Yale L.J. 827, 840 (1974). Indeed, the De Novo program in Minneapolis was said in the just-cited Note to be an example of a diversion program in which most of the discretion was with the prosecutor, "the only role played by the judge [being] in granting the motion for continuance * * * or for dismissal of charges." *Id.* at 840 n. 67 (quoting testimony of program director).

It is also interesting that judicial reticence to interfere with prosecutorial discretion with

respect to pretrial diversion appears to be the norm. *Id.* at 839. According to the Note, the National Advisory Committee on Criminal Justice Standards and Goals took the position that "the decision by the prosecutor not to divert a particular defendant should not be subject to judicial review." *Id.* at 839.

While I do not believe that the trial court has inherent authority to order diversion over the objection of the prosecutor and while there is no statutory authority for that, I believe that there is room for both legislative oversight and judicial involvement. It seems to me that the legislature is free to adopt standards and guidelines controlling the prosecutor's exercise of discretion with respect to diversion, and in my opinion those standards and guidelines should provide the trial court with some limited review of the prosecutor's exercise of that discretion.

For the foregoing reasons, I respectfully dissent from the majority's decision.

ANDERSON, Justice (dissenting).

I join in the dissent of Justice Coyne.

TOMLJANOVICH, Justice (dissenting).

I join Justice Coyne's dissent.

I write to comment on several aspects of the majority decision. The majority notes that the victim's mother felt the court should "let it end" without prosecution. It is incredible that the victim's mother has given "her blessing" to the relationship to preserve her good relationship with her daughter. This law is designed to protect the minor victim from her own immature judgment and that of her mother if necessary.

I am at a loss to understand how the court can put a person on probation and order jail time when the court has not accepted a guilty plea and adjudged the person guilty. Minnesota Statutes § 152.18 does permit the court to impose conditions when adjudication of guilt is stayed; however, that statute does not apply to the criminal sexual conduct charge in this case.

Finally, it is important that "front line" judges have discretion to do their jobs. But when judicial discretion conflicts with the constitutional separation of powers, separation of powers wins. Our system of government works because each of the three branches respects the authority of the other—even when we think we could do their job better than they do. The majority has permitted the courts to encroach into an area reserved to the executive branch by the Constitution.