**STATE of Minnesota, Appellant,**

v.

**Scott Paul LATTIMER, Respondent.**

**No. CO–00–1394.**

Court of Appeals of Minnesota.

Feb. 27, 2001.

Review Denied May 15, 2001.

Mike Hatch, Attorney General, St. Paul, MN; and Janelle P. Kendall, Mille Lacs County Attorney, Scott A. Buhler, Assis-

tant Mille Lacs County Attorney, Milaca, MN, for appellant.

Gregory K. Larson, Mark A. Mitchell, Larson Law Office, Little Falls, MN, for respondent.

Considered and decided by KALITOWSKI, Presiding Judge, RANDALL, Judge, and CRIPPEN, Judge.

## OPINION

RANDALL, Judge

After a prosecutorial charge of criminal vehicular operation resulting in great bodily harm produced a guilty plea, the district court deferred acceptance of the plea until the time of sentencing when the results of a presentence investigation report and mediation between the victim and defendant would be available. At sentencing, the prosecution did not object to the terms of probation, but requested a stay of imposition of sentence, rather than a stay of adjudication of sentence. Defense counsel argued for a stay of adjudication. The district court granted the stay of adjudication upon the conditions that appellant: serve 120 days in jail, pay a fine, pay restitution to the victim and the victim's family, obtain a chemical dependency evaluation and follow through with all recommendations (if the evaluation determines there is an issue with alcohol or other chemicals, attend a support group once a week), abstain from the use and possession of alcohol and mood-altering chemicals, submit to random urinalysis and/or breathalyzer tests, attend a MADD Impact Victim Panel, attend physical handicap educational programming, and abide by all rules and regulations established in conjunction with his probationary status. Appellant State of Minnesota challenges the district court's imposition of a stay of adjudication.

## FACTS

On April 30, 1998, respondent Scott Paul Lattimer crashed the vehicle he was driv-

ing. Respondent and two passengers were thrown from the vehicle. Although an eyewitness reported respondent requested 911 not be called, the authorities were notified. All three were taken to the local hospital. Respondent and one passenger were not seriously injured, but the second passenger, the victim, was in critical condition. He sustained massive injuries, and his chance of survival was in doubt. The victim did survive and is now a quadriplegic.

At the hospital, an officer questioned respondent. Respondent told the officer he had only three beers, but a .17 blood alcohol level is undisputed. On March 15, 2000, respondent pled guilty to the charge of criminal vehicular operation resulting in great bodily harm. The prosecutor requested a stay of imposition of sentence. The district court deferred formal acceptance of the plea until the time of sentencing when the results of the presentence investigation (PSI) and mediation between respondent, the victim and the victim's family would be available.

Among other conditions, the mediation agreement directed respondent to take classes on assisting persons who are quadriplegic and outfit his pontoon to accommodate the victim. Respondent complied in all respects. Neither the PSI report nor the participants of the mediation believed that respondent should do any jail time or lose his license. The victim lives in a different city than respondent, and loss of respondent's license would mean respondent could not drive to visit the victim, take the victim on hunting and fishing trips, or assist the victim's mother in caring for the victim. This assistance is critical as demonstrated by the fact that in the time between the plea and the sentencing, the record shows that respondent had become the victim's "only connection" to the community outside his home.

At the sentencing hearing, the prosecutor renewed a request for a stay of imposition of sentence, and respondent requested

a stay of adjudication. The district court stayed adjudication and imposed the following terms of probation on defendant. Appellant would be required to: serve 120 days in jail, pay a fine, pay restitution to the victim and the victim's family, obtain a chemical dependency evaluation and follow through with all recommendations (if the evaluation determines there is an issue with alcohol or other chemicals, attend a support group once a week), abstain from the use and possession of alcohol and mood-altering chemicals, submit to random urinalysis and/or breathalyzer tests, attend a MADD Impact Victim Panel, attend physical handicap educational programming, and abide by all rules and regulations established in conjunction with his probationary status. The controlling factor for the court was the negative effect a felony adjudication of guilt would have on the victim. The victim would not have respondent to be his personal driver and friend. The court determined that a felony adjudication would further victimize the victim and therefore, justice would not be served. This appeal followed.

## ISSUES

I. Did the district court interfere with the prosecution's discretion in charging by staying adjudication?

II. Did the district court abuse its discretion in sentencing by deferring adjudication of conviction?

## ANALYSIS

### I. Interference with Prosecutorial Discretion in Charging

Stays of adjudication are within a district court's "inherent judicial power." *State v. Krotzer*, 548 N.W.2d 252, 254–55 (Minn.1996). Stays are the *"final disposition* of a criminal case." *Id.* at 254 (emphasis added).

Following *Krotzer*, the supreme court wrote to the issues of stays in *Foss*, holding that the stays must "be relied upon sparingly and only for the purpose of

avoiding an injustice resulting from the prosecutor's *clear abuse of discretion* in the exercise of its charging function." *State v. Foss*, 556 N.W.2d 540, 541 (Minn. 1996). Yet, it noted that the district court "may stay an adjudication of guilt over the prosecutor's objection *without* violating the separation of powers doctrine." *Id.* at 540 (emphasis added). The tension between these two statements in *Foss* has been exasperated by its progeny in an attempt to bridge the great divide between logic and myth.

Logic dictates that whether a district court (1) executes a sentence and incarcerates a person, (2) stays execution or imposition of a sentence coupled with terms of probation that may include incarceration up to 12 months, or (3) stays adjudication of guilt but imposes a sentence consisting of terms of probation that may include incarceration up to 12 months, that each disposition is a sentence.

The myth is that an executed sentence, a stay of execution, and a stay of imposition are each a sentence, but a stay of adjudication is not. Rather, the stay of adjudication is some "third kind of animal" from pretrial hearings like suppression hearings or bail hearings. This is a myth because *Krotzer* makes it clear that with a stay of adjudication, the district court has the power to impose terms and conditions of probation that can include incarceration in a local jail of up to 12 months. Thus, we know that a formal stay of adjudication coupled with terms of probation is not a "diversion" or a "de novo," because neither of those two informal dispositions allows a judge, district or appellate, to incarcerate a citizen for up to 12 months in a county jail. With a stay of adjudication, the district courts have the power to incarcerate a person in a county jail for up to 12 months, the same time allowed under stay of execution of sentence or stay of imposition of sentence.

Because *Krotzer* is crystal clear that incarceration is allowed upon a stay of

adjudication, the stay of adjudication is a sentence. If it is not a sentence, then I am not sure that even judicial immunity would protect us from lawsuits for false imprisonment. It is outside the scope of any judge's authority to take a plea of guilty or accept one from a jury, find that all essential elements of the crime have been proven beyond a reasonable doubt, and incarcerate a citizen in jail unless it is part of a sentence.

In some of the *Krotzer* progeny, there has been an attempt to limit stays of adjudication to those cases where there is a "clear abuse of prosecutorial discretion" in the charging function. Again, this is a myth. When stays of adjudication are used, and they are used throughout the State of Minnesota, at least to some degree, the prosecution never comes into court and makes a formal record stating:

> Your honor, on behalf of the state, I concede that there has been an abuse of prosecutorial discretion on this charge. Therefore, I now consent to a stay of adjudication.

That record is nonexistent. Similarly, on all stays of adjudication that are entered into in this state, the district court judge never makes a formal record stating:

> On this record, I find that there has been a prosecutorial abuse of discretion in overcharging. I agree that I did not take care of that before trial or during trial. I agree that I let the improper counts go to the jury, or if this is a plea of guilty, I accepted a plea to an overcharged offense and now that I have made this record, I will make it up to the defendant on sentencing by giving a stay of adjudication.

We do not have that record here. We never have and never will.

On those occasions, when a district judge makes a conscious decision that a prosecutor has overcharged a case, the overcharge, the prosecutorial abuse of discretion, *is handled well before sentencing.* There could be a partial or total dismissal of the count or counts at the probable cause hearing. There might be a partial or full dismissal prior to trial upon motion by defense counsel. There could be a partial or full dismissal at the conclusion of the state's case in chief, upon motion by defense counsel, or by the court on its own motion. There might be a partial or full dismissal of the charges at the conclusion of all the evidence and before the case is submitted to the jury, again, upon motion by defense counsel, or by the court on its own motion. In addition to that, you can have a district court following a verdict, upon a renewed motion by defense counsel, or on its own motion, dismiss part or all of the charges. The point is, the district court judge never sits idly by through the entire criminal justice process from start to finish viewing prosecutorial abuse of discretion, doing nothing until the sentencing, and then makes a formal record wherein the judge states that now that he and the system have allowed this prosecutorial abuse of discretion in charging to play itself out, "he will make it up with a lenient sentence!" Neither the prosecutor nor the judge should be subjected to that kind of hypocrisy. Literally, *Foss* and some of its progeny could lead one to make the argument that that is the standard.

There is a canon of construction stating that the legislature never intends an absurd result. Minn.Stat. § 645.17 (2000) (stating that the courts, when ascertaining the intent of the legislature, must assume that the legislature did not intend an absurd or unreasonable result). That canon of construction must apply equally to the judiciary. If the legislature "can never intend an absurd result," then the judiciary cannot allow itself to intend an absurd result if we are to comport with the dictates of the federal constitution and the State of Minnesota Constitution mandating due process in the criminal justice system for all people.

I am not sure how and why the myth of "prosecutorial abuse in charging" came to be the keystone. *Krotzer,* the seminal

case, is clear. There was no abuse of discretion by the prosecutor in the charge. The charge was perfectly appropriate given the defendant's conduct. There was no separation of powers problem in *Krotzer*. In *Krotzer*, the prosecutor investigated and filed charges, obtained a guilty plea, and recommended a sentence to the court. *Krotzer*, 548 N.W.2d at 254. The supreme court dismissed the state's claim that the judiciary was interfering with prosecutorial discretion in charging by stating:

> However, the prosecutor's power to file charges and prosecute an individual was not infringed upon here. As Krotzer states, the Carver County prosecutor investigated the allegations against Krotzer, filed criminal charges, obtained a guilty plea, and recommended a disposition and sentence to the court. The trial court then postponed acceptance of the plea and placed Krotzer on probation, *but this did not affect the prosecutor's carefully defined role. The final disposition of a criminal case is ultimately a matter for the presiding judge.* As we stated in *Olson*, once the legislature has defined the range of punishments for a particular offense, *it cannot 'condition the imposition of the sentence by the court upon the prior approval of the prosecutor.'*

*Krotzer*, 548 N.W.2d at 254 (citations omitted) (emphasis added).

The sentence in *Krotzer* came down to what is an everyday occurrence in courts throughout this state, arguments by the defendant for one sentence, and arguments by the prosecutor for another. The prosecutor in *Krotzer* there was not malicious. He argued for a particular kind of moderate sentence. Defense counsel argued for a sentence even more moderate. The probation office and the victim's family voiced support for the recommendation of defense counsel. After hearing all arguments, the district judge imposed the moderate sentence argued for by defense counsel. *Krotzer* was a sentencing issue, not a charging issue. Attempts to turn *Krotzer*

into anything other than what it was means you build a string of cases that are a pyramid of cards standing on loose sand and it will eventually, as it must, collapse under its own weight of nonlogic.

What happened in *Krotzer* is precisely what occurred in the present case. The prosecutor conducted an investigation, and charged respondent with criminal vehicular operation resulting in great bodily harm, a perfectly appropriate charge. The prosecutor obtained a guilty plea and recommended a stay of imposition of sentence to the district court. That recommendation was proper for the prosecutor to make. That recommendation for a sentence, if accepted by the district court here (although it is not our issue), likely would have withstood any sentencing appeal by the defendant claiming that there should have been a further downward departure from stay of imposition down to stay of adjudication. The charges in *Krotzer* and the present case were appropriate for the conduct. In the present case, like *Krotzer*, the district court had various sentencing options available to it, and chose one.

Disputes over sentencing between prosecution and defense are common. District courts listen to them and pick the sentencing option they feel best fits the facts of the crime. Sentencing is within the court's prerogative. *See State v. Schmit*, 601 N.W.2d 896, 898 (Minn.1999) (holding the decision to depart from the sentencing guidelines is within the district court's discretion and will not be disturbed absent clear abuse of that discretion); *State v. Sanders*, 598 N.W.2d 650, 656 (Minn.1999) (holding supreme court "will not interfere with a trial court's discretion in sentencing unless the sentence is disproportionate to the offense") (citation omitted); *State v. Olson*, 325 N.W.2d 13, 18 (Minn.1982) (holding district court judges, not the prosecution, pronounce sentences). In this case, as in *State v. Hoernemann*,

> we have a sentencing dispute, no more, no less, over whether the district court will stay imposition of sentence with cer-

tain conditions of probation, impose a straight misdemeanor sentence, or stay adjudication of guilt, but couple the stay with certain normal conditions of probation.

No. C9–98–274, 1998 WL 463320 *5 (Minn. App. Aug.11, 1998) (Randall, J. dissenting). Prosecutors charge, defense attorneys defend, and upon convictions or pleas of guilty, judges sentence. Each has its own defined sphere.

Stays of adjudication have enjoyed a long history of use in our court system, and *are still commonly used today* despite the lack of clarity in recent appellate decisions. The county attorney, at oral argument in the present case, agreed candidly that she agrees to stays of adjudication whenever she so desires. She agreed that she is aware that stays of adjudication both before and after *Krotzer*, and up to the present, are being used, at least to some degree, some more than others, in different counties.

The state here contends that the prosecutor has to agree to this type of sentence. If that becomes the rule, then there is a *serious* violation of the separation of powers. When the state claims direct veto power and direct control over sentencing, it is a substantial infringement on the sole power of the courts to impose sentences. *See State v. Pero*, 590 N.W.2d 319, 326 (Minn.1999) (stating "[s]entencing is within the province of the judiciary, not the executive branch"); *Olson*, 325 N.W.2d at 18 (stating once the legislature has defined the range of punishments for a particular offense, it cannot "condition the imposition of the sentence by the court upon the prior approval of the prosecutor"); *People v. Superior Court of San Mateo County*, 11 Cal.3d 59, 113 Cal.Rptr. 21, 520 P.2d 405, 409–10 (1974) (stating prosecutor may not "veto" district court judge's decision to divert defendant into pretrial treatment program because "disposition is a function of the judicial power no matter what the outcome").

If the prosecution is allowed direct veto power over a stay of adjudication in sentencing, the logical question is why stop there, and can you stop there? If the prosecution then wants veto power over stay of imposition of sentence [1] whenever the sentencing judge is debating between stay of imposition and stay of execution, do we give them that power? Put another way, to be fair, as the constitution mandates fairness to citizens as well as the state, do we allow defense counsel, whenever the judge is considering stay of execution or stay of imposition, to veto stay of execution and mandate that the court stay imposition of sentence? Prosecutors would not like that nor should they. District court judges would not like that nor should they. It would be an egregious intrusion into the power of the courts to sentence. Yet, that is precisely the issue, and the only issue in this case. Here, the prosecution concedes that its discretion in charging the offense was not interfered with in any way, shape, or form whatsoever. It charged exactly the crime that it thought the facts fit, and the defendant pled guilty to that crime. With praiseworthy candor, the prosecution concedes that it has no objection to the terms of probation that the court imposed and is specifically not arguing for an execution of sentence and incarceration in prison. The county attorney simply argues that it should be stay of imposition of sentence rather than stay of adjudication of sen-

1. Stay of imposition of sentence means that if a defendant successfully completes the terms of probation and is discharged, even though the original plea was to a felony, the defendant in the State of Minnesota only has a misdemeanor record. Minn.Stat. § 609.13(2) (2000). This is a sentencing option sought after by defendants, because if there is stay of execution of sentence, while they avoid incarceration in a state penitentiary, and will serve their time, if any, only in a local jail or a county work farm they do acquire a felony record. Stay of adjudication of sentence has some similarity to stay of imposition of sentence because with stay of adjudication of sentence, you do not formally have a criminal record unless that stay is revoked because you violated the terms of your probation.

tence. This case involves only a sentencing issue, not an issue of the prosecution abusing its discretion in charging.

In sum, there was no interference with the prosecutor's discretion in charging; rather, the district court chose an available sentencing option, staying adjudication.

## II. Appellate Review of Sentencing: Abuse of Discretion

 A reviewing court will not interfere with the district court's decision regarding sentencing unless there has been a clear abuse of discretion. *State v. Lundberg*, 575 N.W.2d 589, 591 (Minn.App. 1998), *review denied* (Minn. May 20, 1998). In this case, the district court worked long and hard to fashion an appropriate sentence that took into account all of the factors that go into good sentencing. The court looked at the offense, the conduct of the defendant following the offense, the recommendations of the victim and the victim's family, and the presentence investigation report.

As stated previously appellant was placed on probation with conditions that he: serve 120 days in jail, pay a fine, pay restitution to the victim and the victim's family, obtain a chemical dependency evaluation and follow through with all recommendations (if the evaluation determines there is an issue with alcohol or other chemicals, attend a support group once a week), abstain from the use and possession of alcohol and mood-altering chemicals, submit to random urinalysis and/or breathalyzer tests, attend a MADD Impact Victim Panel, attend physical handicap educational programming, and abide by all rules and regulations established in conjunction with his probationary status. These conditions were imposed at sentencing on May 23, 2000, however, appellant had already accomplished many of them. Appellant, the victim and the victim's family had participated in mediation and on March 15, 2000, developed a list, which contained many of the same requirements.

Appellant outfitted his pontoon so that he can take the victim fishing. He and the victim plan trips together. He maintains regular and consistent contact with the victim. Indeed, affidavits submitted by the victim and the victim's mother affirm the district court's finding of the strong bond that developed between the two men, and the appellant's total assumption of responsibility for his actions. With a formal adjudication of guilt, respondent would lose his driver's license. The court noted that if respondent cannot drive, the victim would lose his connection to the community, and the victim's mother would lose her support. The court concluded that the bond of friendship, support, and regular connections to the community and the outdoors could not be replaced with government services.

Under our limited scope of appellate review on sentencing, we cannot say that there was any interference in this case with the prosecutor's ability to charge the crime. Further, there was no abuse of discretion by the district court in imposing the sentence that it did.

## DECISION

The district court did not interfere with the prosecutor's ability to charge a crime. The district court did not abuse its discretion in imposing the sentence that it did.

**Affirmed.**

CRIPPEN, Judge (concurring specially)

I concur in the opinion of Judge Randall but with these additional statements on the case.

### 1. Governing law

The majority agrees on the proposition at the root of this decision, that *State v. Foss*, 556 N.W.2d 540 (Minn.1996) must not be unreasonably read and applied.

At least in those cases where the defendant has been found guilty of a criminal

act,[2] the trial court has lawful authority to stay the ultimate adjudication of guilt in special circumstances demonstrating that this action is in the "furtherance of justice." *State v. Krotzer*, 548 N.W.2d 252, 254–55 (Minn.1996).

*Krotzer* recognized the special circumstances confronted in that case and found it significant that the trial court strongly disagreed with the prosecution's view on the disposition of the case. *Id.* at 254. The court said little more to suggest the appropriate level of deference the reviewing court should give to the trial court's determination on the justice of the case. *Foss* ratifies the notion, evident in *Krotzer*, that the reviewing court will upset a judgment reflecting "mere disagreement" of the trial court and the prosecutor. *Foss*, 556 N.W.2d at 541. The stay of adjudication should not be a routine practice but a remedy employed "sparingly." *Id.*

To these general but meaningful concepts, *Foss* suggested another: the stay of adjudication should be employed only for injustices resulting from the prosecutor's clear abuse of discretion "in the exercise of the charging function." *Id.* In the aftermath of *Foss*, this statement has been read persistently as a reference to prosecutorial discretion in assessing whether the state had sufficient evidence to prove that an offense had occurred. But the weight of evidence supporting a charge is largely beside the point when considering the cause for staying an adjudication, as it no doubt was in *Krotzer* and the subsequent cases that address the same issue. What was at issue in those cases was whether the trial court had cause to strongly question whether the prosecution erred in its insistence that a conviction be recorded, perhaps when it brought the charges—as might be the case when a compelling, existing alternative was disregarded—but more commonly when the case advanced to the point where an adjudication and disposition might occur.

The authority of *Krotzer*, never subsequently corrected, extends to cases where the prosecutor abuses its executive discretion by rigidly objecting to a disposition without adjudication of the offense, where the trial court is empowered to act differently if the special circumstances of the case permit the court's strong conviction that this is in the furtherance of justice. We should not employ a distorted reading of *Foss* to create instead an unbridled discretion of prosecutors. I concur with the conclusion of Judge Randall that an executive veto power seriously infringes on the judicial role of pursuing justice under the rule of law.

### 2. Standard of review

Neither *Krotzer* nor *Foss*, nor their progeny, make evident the appropriate standard of review for the appellate courts: the deference that should extend to the trial court in cases of this kind. The majority agrees that these are sentencing decisions, a classification that bears on the standard of review and on jurisdictional topics that have been addressed in earlier minority opinions. Perhaps this suggests, as Judge Randall concludes, a "limited" standard of review. Perhaps, when applied alongside the search for circumstances that are special that permit the trial court's strong disagreement with the prosecutor and on practices that are not just routine, a more probing appellate review should be employed. An explicit identification of the standard of review is not necessary for purposes of this case, as it was not in *Krotzer*. The circumstances of this matter are unique and support the trial court's strong conviction that an adjudication should not occur if respondent abides by stated conditions. The trial court has given what the law does not

---

**2.** A "stay of adjudication" may occur before the determination of guilt, at least in circumstances where the defendant waives the right to an early adjudication of the case. The matter is conditionally laid on the table for a later dismissal in the interests of justice. The peculiar characteristics of this form of stay, to my knowledge, have not been addressed by *Krotzer* and its progeny.

always guarantee, a just solution to a tragic problem. We would do otherwise if we did not affirm the trial court's decision.

KALITOWSKI, Judge (dissenting)

I respectfully dissent. The law regarding stays of adjudication is clear. District courts should only rarely interpose on prosecutorial discretion. *State v. Foss*, 556 N.W.2d 540, 541 (Minn.1996) (holding stays of adjudication should "be relied upon *sparingly*" only when the prosecutor has clearly abused his or her discretion in charging and special circumstances exist). The legislature has also expressed its preference regarding stays. *See* Minn.Stat. § 609.095(b) (2000) (requiring a court to adjudicate a defendant's guilt after he pleads guilty or is found guilty).

There is no contention that the prosecutor abused her discretion in charging respondent. Moreover, the facts here do not meet the "special circumstances" referenced in *Krotzer*. *See State v. Krotzer*, 548 N.W.2d 252, 254 (Minn.1996) (finding the situation "warranted unusual judicial measures" supported by "special circumstance"). A conviction in *Krotzer* would have resulted in a permanent label of sexual predator. *Id.* at 253. Here, the charge and consequential loss of a driver's license is not out of line with respondent's conduct, which was a felony. *Cf. State v. Prabhudail*, 602 N.W.2d 413, 415 (Minn. App.1999) (finding even misdemeanor conduct resulting in deportation does not meet "special circumstances" requirement), *review denied* (Minn. Jan. 18, 2000).

I would reverse the district court.