**STATE of Minnesota, Appellant,**

v.

**Bhawesh PRABHUDAIL, Respondent.**

No. C2–99–501.

Court of Appeals of Minnesota.

Nov. 16, 1999.

Review Denied Jan. 18, 2000.

Mike Hatch, Attorney General, St. Paul, MN; and Jay M. Heffern, Minneapolis City Attorney, Daniel P. Rogan, Special Assistant City Attorney, Minneapolis, MN (for appellant).

Stanley H. Nathanson, Richfield, MN (for respondent).

Considered and decided by SCHUMACHER, Presiding Judge, RANDALL, Judge, and FOLEY, Judge.*

## OPINION

SCHUMACHER, Judge.

Appellant State of Minnesota challenges the district court's continuation for dismissal of a solicitation charge, contending there were no justifying special circumstances. We reverse.

## FACTS

The Minneapolis police arrested respondent Bhawesh Prabhudail after he allegedly offered a plain-clothes officer, acting as a prostitution decoy, money for sexual contact. The state charged Prabhudail with misdemeanor solicitation of prostitution in violation of Minn.Stat. § 609.324, subd. 3 (1998). At a pretrial hearing, Prabhudail's counsel informed the district court that, due to Prabhudail's immigration status, a conviction would be grounds for immediate deportation. Prabhudail's counsel requested the court to resolve the case by either a stay of adjudication or a continuance for dismissal. Over the prosecutor's objection, the district court continued the matter for one year conditioned upon no solicitation violations and a $100 payment for prosecution costs. The state appeals.

## ISSUE

Is deportation a special circumstance justifying a continuance for dismissal?

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## ANALYSIS

A continuance for dismissal and a stay of adjudication are functionally equivalent and are appealable by the state in nonfelony cases, despite any inclusion of criminal sanctions. *State v. Thoma*, 569 N.W.2d 205, 207–208 (Minn.App.1997), *aff'd mem.*, 571 N.W.2d 773 (Minn.1997). A district court may grant such an order over the prosecutor's objection using its inherent judicial power in cases involving special circumstances. *State v. Krotzer*, 548 N.W.2d 252, 254–55 (Minn.1996). The supreme court has explained that mere disagreement with the prosecutor does not constitute special circumstances, and that the inherent judicial authority should

> be relied upon *sparingly* and only for the purpose of avoiding an injustice resulting from the prosecutor's *clear abuse of discretion* in the exercise of the charging function.

*State v. Foss*, 556 N.W.2d 540, 541 (Minn. 1996).

Here, the district court, relying on *Krotzer* and *Foss*, determined that disruption of Prabhudail's family upon deportation for misdemeanor solicitation was a sufficiently adverse circumstance to warrant exercising the court's inherent authority. Any deportation in this case, however, does not result from a clear abuse of the prosecutor's discretion in the exercise of the charging function. *See Alanis v. State*, 583 N.W.2d 573, 574 (Minn.1998) (deportation is collateral consequence of criminal conviction). Since there is no evidence of any prosecutorial abuse of discretion, the possible deportation consequences are not justifying special circumstances. To hold otherwise would ignore the limitation that the supreme court laid out in *Foss* and has applied in similar circumstances. *See State v. Vahabi*, Nos. C7–95–1795, C9–95–1796, 1996 WL 940208 (Minn. Dec. 11, 1996)

Minn. Const. art. VI, § 10.

(order opinion reversing opinion of this court that affirmed deportation as special circumstance justifying stay of adjudication).

## DECISION

Absent evidence of a prosecutor's clear abuse of discretion in the charging function, deportation consequences are not special circumstances justifying a continuance for dismissal.

**Reversed.**

RANDALL, Judge (dissenting).

I respectfully dissent. The simple issue in this case is whether the district court abused its discretion with what was, in effect, a minute downward departure from the usual sentencing on a misdemeanor (there are no "sentencing guidelines," as such, on misdemeanors and gross misdemeanors). Here, giving due respect for the record laid by the district court, I conclude the district court properly sentenced respondent based on the court's inherent judicial authority.

Respondent, an immigrant, took a look-alike prostitute, an undercover police woman acting as a decoy, at her word, and offered her money (just $10 was involved) for sex, which she fully intended him to believe was the case. Upon respondent's completion of the act of transferring cash to her, the undercover policewoman said, no thanks, and by the way, you are under arrest for soliciting a prostitute. First of all, I conclude, as the district court did, that an immigrant taking a look-alike prostitute at her word, only a misdemeanor to start with, is not the most serious misdemeanor with which we deal.

The district court was assured by respondent's criminal defense attorney that he had checked out respondent's immigration status with an immigration attorney. The attorney told respondent's counsel that soliciting a prostitute could be interpreted as a crime of moral turpitude and could endanger respondent's immigrant status and subject him to deportation. 8 U.S.C. § 1251(a)(2)(A)(ii) (1994) states:

> Any alien who at any time after entry is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined thereof and regardless of whether the convictions were in a single trial, is deportable.

Respondent's attorney argued that deportation for respondent would mean separation from his family, and according to respondent's attorney, respondent's wife will herself soon gain U.S. citizenship.

To avoid a technical conviction for a low-level crime of moral turpitude, the district court then continued the case for a dismissal, provided respondent had no further prostitution or solicitation for sexually related violations for a year and paid $100 in court costs. The sentence by the district court was perfectly appropriate under the circumstances. Nothing more would accrue to appellant, the State of Minnesota, if the district court had entered a technical conviction for the misdemeanor of soliciting, which is what the state is here on appeal whining about.

The district court could have entered a misdemeanor conviction and imposed exactly the same sentence, a one-year informal probation, and $100 in court costs, and the state would have been satisfied, would have had to be satisfied, because the Minnesota Rules of Criminal Procedure are unambiguous. Misdemeanor sentences are not appealable by the state. *See* Minn. R.Crim. P. 28.04, subd. 1 (providing limited bases on which state may appeal, and which does not include appeal from misdemeanor sentences). However, the record conviction for this low-level misdemeanor would have subjected this immigrant to the potential threat of deportation to a country thousands of miles away from here and from his family.

To rectify this grotesque imbalance between what respondent did and the possi-

ble consequence, deportation, the district court properly employed a sentencing device that has been around for years. I will take judicial notice that it has been used by district court judges for at least 30 years, if not longer. It is still being used, despite ineffective and muddled attempts by the state and by the appellate court system to stamp it out. The sentencing device, one of the more caring and thoughtful discretionary tools in a district court judge's arsenal, is stay of adjudication/continuance for dismissal.

As I pointed out above, the year of informal probation and the $100 court costs are the same to the state either way, whether a sentence upon a formal conviction, or a continuance for a dismissal. The state has no power to appeal a misdemeanor sentence. If the state got its precious misdemeanor conviction, and the district court put respondent on probation for one day, and then suspended that, and fined him $1.00 and then suspended that, the state would have to be satisfied.

What is happening here is an eerie recreation of a criminal case that I studied over 30 years ago, as a freshman in law school. To illustrate the arbitrary and capriciousness of law, as it is written on the books, and to illustrate the power that judges have, and should employ, to dilute egregious effects of blind adherence to black-letter law, the criminal law casebook set out the tale of two trial court level English judges in the Eighteenth Century.

Two men, both with families, appeared before two different trial judges on the same day. Each man had been caught red-handed stealing chickens for food. The first judge took a look at the facts and the law, and said to the defendant that, yes, chicken stealing was against the law, but he could understand the man's need for food to feed his family. So he fined him six pence for restitution for the chickens, and an additional six pence as a court fine and sent him home with the admonition to stop stealing chickens. The second judge (I suspect somewhat arrogant in his assumption that he was a "defender of the establishment," rather than a lackey thereof), had a theory that stealing chickens was a "gateway" crime and that if you didn't crack down on a defendant the first time he was caught stealing chickens, why it might be the crown jewels of the Monarchy the next year, it might be the Tower of London the following year, and then where would the British Empire be! Thus, he sentenced the defendant for stealing chickens to life imprisonment without parole and ordered his immediate deportation to the then penal colony of Australia. So on that same afternoon, the chicken thief who had appeared in front of the first judge, the commonsense judge, while walking home, passed by jailers carrying his counterpart in shackles toward the harbor and the prison ship to be deported to begin a life sentence.

In this case today, the district court judge appears in the role of the first judge who made sense out of a relatively minor incident and imposed upon respondent some reasonable consequences. I do not minimize the societal ills from prostitution, but on these facts, I am speaking out against a blind inflexible approach by the state. The state appears here in the role of the second judge, a judge unthinking and uncaring, who from the safety of his high bench deported a man thousands of miles away from his family for the low-level crime of stealing chickens.

At oral argument, the state argued that they had no direct proof that respondent would be deported if the misdemeanor conviction for soliciting was actually recorded on the judgement rolls, but had only second-hand information through respondent's counsel. I understand the point. So I asked the attorney for the state a direct question at oral argument. I asked him if his position would change and would he go along with the district court-imposed continuance for a dismissal if he had independently verified that respondent could face immediate deportation if the misdemeanor conviction were on the books. He

stated, with frankness and candor, that that independent knowledge would not change his position and the state would still continue to appeal the continuance for dismissal as an improper use of district court discretion. I then asked the counsel for the state whether if he got his way and a technical misdemeanor conviction were entered on respondent's record, and if the Immigration and Naturalization Service (INS) actually began deportation proceedings, the state (the City of Minneapolis in this instance) would go to bat for respondent and, using the power of its office, indicate to the INS that deportation out of the country was not what they had in mind when they initially brought the misdemeanor charge of soliciting a prostitute. Again, with frankness and admirable candor, counsel for appellant answered, "That is not our policy." [1]

Thus, the issue is joined squarely. The district court judge who heard the facts in the case imposed an equivalent sentence of one-year informal probation and $100 in court costs. The State of Minnesota, as appellant here today, urges the functional equivalent of the sentence imposed by the second judge in the above example, meaning the state urges a conviction of record, knowing that it could lead to deportation of a man from his family to a continent thousands of miles away. Deportation is tantamount to a type of life imprisonment, meaning a lifetime of exile from this country.

The issue of whether the state can even appeal from a misdemeanor sentence of stay of adjudication/continuance for a dismissal has been gone over in detail before by me and other judges. *See State v. Hoernemann*, No. C9–98–274, 1998 WL 463320, at *6-*9 (Minn.App. Aug.11, 1998) (Randall, J., dissenting) (discussing appealability of stays of adjudication imposed in

misdemeanor cases). As I stated in *Hoernemann*, stays of adjudication/continuances for a dismissal are types of sentences, not this myth of "pretrial appeals" of pretrial issues. *Id.* at *4-*6. We know from the seminal case, *State v. Krotzer*, 548 N.W.2d 252 (Minn.1996), that whether the underlying charge is a misdemeanor or a felony, district judges have the inherent power to both impose stays of adjudication and couple that with incarceration. *See Krotzer*, 548 N.W.2d at 254–56 (holding stay of adjudication under circumstances was within inherent judicial power and court acted properly by ordering 60 days in jail as a condition of probation).

*When a judge in Minnesota can find a citizen in violation of the Minnesota Criminal Code and put that citizen in jail for that violation, you have a type of sentence.* To argue otherwise, to argue that incarcerating a citizen is not a type of sentence, but a "pretrial matter," like issues over the admissibility of evidence, is to be foolish, and to assume that a lack of understanding of the criminal justice system can be covered up.

If the State of Minnesota truly allowed judges, whether district court or appellate, to find its citizens guilty of a violation of our criminal code and impose incarceration, and do it not as part of a sentence, the United States Constitution and the Geneva Convention would be in a dead heat to overturn that practice. There are other countries in the world where judges can direct a finding of guilty, but not in Minnesota or anyplace in the United States of America. The defendant either has to plead guilty and the district court judge has to elicit enough facts to believe that is true by proof beyond a reasonable doubt, or a jury has to come to that conclusion. There is no other way. This was

---

**1.** I do not fault the attorney who appeared for appellant at oral argument on a personal basis. He had no hand in drawing up the policy that his job description calls for him to defend. I do take sharp and severe issue with the thoughtlessness behind the policy once

the true facts emerged. The hurtful decision by the state to continue with this appeal, rather than merely accept with good grace what the district court did, drenches, in an ugly odor, our criminal justice system.

the case with the stays of adjudication in *Krotzer* and *Hoernemann*. The district court had to come to the conclusion that the defendant had "done it" before imposing the sentence it did. Then in *Krotzer* and *Hoernemann*, the district court, after satisfying itself that the essential elements of the crime had been proven, chose, in the exercise of judicial discretion, to impose a stay of adjudication/continuance for a dismissal. (I agree with the majority that a stay of adjudication and a continuance for dismissal are functionally equivalent to frame the issue.) In neither *Hoernemann* nor in this case, nor any of the mislabeled progeny of *Krotzer* was the district courts deciding "pretrial" evidentiary or suppression issues such as evidence, confessions, etc. Instead, they were imposing a type of sentence. As I said, they had to be imposing a type of sentence. *Krotzer* authorized incarceration as a part of a stay of adjudication. 548 N.W.2d at 255–56 (affirming district court's decision to accept stay of adjudication and ordering Krotzer to serve 60 days in jail as condition of probation). Incarceration is a type of sentence. To me, that issue should be closed *if* we are to be honest.

If incarceration is a part of a sentence, then stays of adjudication/continuances for a dismissal are simply not appealable on misdemeanors, even if there is a feeling that the district court abused its discretion. *See* Minn. R.Crim. P. 28.04, subd. 1(2) (stating prosecution may appeal only from sentences imposed or stayed in felony cases). For instance, on the most insignificant misdemeanor, a district court could sentence a defendant to 90 days in jail plus a $700 fine. That sentence is not appealable by the defendant. On the most egregious misdemeanor, a district court could sentence a defendant to one day and $1.00 and suspend both. That sentence is not appealable by the state. We have accepted the nonappealability of misdemeanor/gross misdemeanor sentences since the 1983 amendments to the criminal rules.

There seems to be a voiced concern by the state and its prosecutors that if stays of adjudication/continuances for a dismissal are allowed, they will become "too routine," and district court judges will abuse their discretion in using them too often. *I have no earthly idea where this argument comes from.* Since the criminal rules were amended approximately 17 years ago, law enforcement in the state has *never* had the power to appeal misdemeanor/gross misdemeanor sentences. During those 17 years, I have not seen nor heard any horrendous outcry by the state and prosecutors that district court judges around the State of Minnesota are horribly abusing their power for sentences on misdemeanor/gross misdemeanors because there is no appeal by the state.

Why do we have this outcry now over stays of adjudication/continuances for dismissal? The answer lies in the initial test set out in *Krotzer*: Did the prosecution "abuse its discretion" in charging the crime? *See Krotzer*, 548 N.W.2d at 254 (stating absent selective or discriminatory prosecutorial intent or abuse of discretion by prosecutor, judiciary may not interfere with prosecution's charging power). That test is misplaced. It started with nothing in the *Krotzer* record to support it, and went nowhere from there! A test resting on "prosecutorial discretion" is impossible to define and impossible to administer. That is the root of the divisiveness between district and appellate courts since *Krotzer* and its progeny have been published. As the briefs and argument for the state in *Krotzer* show, the fear of the state is that stays of adjudication and continuances for dismissal "interfere with the prosecution's ability to charge out crimes and is a violation of the separation of powers." When looked at objectively, exactly the reverse is true! When stays of adjudication/continuances for dismissal are viewed as what they truly are, a type of sentence, then concededly there is no interference with the prosecution's power to charge, because sentencing is an acknowl-

edged function for the judge. *See, e.g., id.* ("The final disposition of a criminal case is ultimately a matter for the presiding judge"); *State v. Olson*, 325 N.W.2d 13, 18 (Minn.1982) (stating imposition of sentence within limits prescribed by legislature is purely judicial function). Prosecutors charge, defense attorneys defend, and upon convictions or pleas of guilty, judges sentence. Each has its own defined sphere.

The real violation of the state's inherent power to describe criminal acts and authorize prosecutors to charge out violations will come when judges attempt to employ the *Krotzer* "abuse of discretion in charging" test, when they wish to utilize stay of adjudication/continuance for dismissal. *There was never any such abuse of discretion in charging in Krotzer!* Because of the relative ages of the victim and the defendant, the criminal sexual conduct charge in *Krotzer* was perfectly appropriate. The prosecutor did not dream up at the last minute the onerous label of "sexual predator" for the defendant—the legislature had done that previously. The prosecutor in *Krotzer* charged out an appropriate charge, argued appropriately for a conviction of record, whether done by stay of imposition or stay of execution, and was only rebuffed in his attempt to get a formal conviction of record because the district court judge wisely and appropriately, taking note that a conviction of record would lead to an egregious undeserved label, went through the process of stay of adjudication coupled with some terms of probation and some terms of incarceration. The Minnesota Supreme Court completely misconstrues its own *Krotzer* test when it talks about stays of adjudication/continuances for dismissal turning on prosecutorial abuse in charging. *There was never any claim in Krotzer that the prosecutor had an improper or an egregious overcharge.* Based on the ages of the defendant and the victim, the charge in *Krotzer* fit exactly and squarely within the statute. The only issue was how to handle the sentence so as not to hang an undeserved label on a defendant which even the victim and her family did not want. *Krotzer* was totally about sentencing, not about charging. *Krotzer* reaffirmed the inherent judicial authority of the courts to sentence.

There was no prosecutorial absence of discretion in charging in *Hoernemann*. There is no prosecutorial abuse of discretion in charging in this case. *Soliciting a prostitute was the only charge the city attorney had which fit the facts. It was a perfectly appropriate charge on the facts.* It is the type of sentence for respondent that is in issue, not the charge.

The judicial test for reviewing stays of adjudication/continuances for dismissal should be, has to be, to unravel this mess we are in, the same test as we have employed for two decades in reviewing district court sentences, meaning abuse of discretion on felonies, and no review on misdemeanors and gross misdemeanors.

The majority cites to *Alanis v. State*, 583 N.W.2d 573, 574 (Minn.1998) and *State v. Vahabi*, Nos. C7–95–1795, C9–95–1796, 1996 WL 940208 (Minn. Dec. 11, 1996), both deportation cases. I can only point out that in both cases the initial charges were at the *felony* level, not the low-level misdemeanor we have in this case.

If the judicial test on appellate review in *Alanis* and *Vahabi* were the standard abuse of discretion we use on appellate review for all other appeals by the state for downward departures, then the reversals in *Alanis* and *Vahabi* (I would have gone the other way, but that is not the point), make sense because then they would be consistent with the threshold for reviewing other upward or downward departures.

It is this skewed, bizarre belief that "abuse of prosecutorial discretion in charging" is involved when there is a stay of adjudication/continuance for dismissal that causes all the trouble. It causes all the trouble because it is a myth, and it is impossible to disprove a myth. Let the

prosecution charge whatever they want. That is their role. The defense attorney's role is to defend. If there is a conviction, it is the judge's role to sentence. The State of Minnesota has always done it that way and enjoys a nationwide reputation for fairness and stability in its criminal justice system. The reasoning behind appellate review in *Krotzer's* progeny is a blot on that reputation.

The majority reverses the order of the district court continuing the matter for dismissal. I wish to point out that the reversal means only that the case is now remanded to the district court for trial. The reversal cannot mean that respondent is now legally adjudicated guilty and that the only thing remaining is a full sentence somewhere within misdemeanor limits. It cannot mean that because the state's entire mantra on claiming appealability in misdemeanors for stays of adjudication/continuances for dismissal is that these are "pretrial" appeals. When the state wins a pretrial appeal in a criminal matter, it then goes back to the district court for a later trial.

Because dissents are merely suggestive rather than directive, I can only point out to the district court the state of the record, and other matters, of which the district court can take judicial notice. The first matter of record is that the state concedes in its brief that a court can dismiss a charge "in furtherance of justice." Minn. Stat. § 631.21 (1998). I can point out that dismissals in the furtherance of justice are not appealable. *See* Minn. R.Crim. P. 28.04, subd. 1(b) (providing prosecution cannot appeal district court order dismissing complaint pursuant to Minn.Stat. § 631.21). Such a dismissal takes away any threat of deportation. Secondly, I can point out that if there is a full and fair bench trial following this reversal and remand, and then a finding of not guilty, that is a final judgment and not appealable. That takes care of any threat of deportation.

I dissent for all of the above reasons. The district court did the right thing and we are mishandling it, doing the wrong thing on stays of adjudication/continuances for dismissals by reviewing them under an unworkable standard. The standard should be the simple abuse of discretion test, applied against the judge, not the prosecutor, as we do in all other forms of sentencing.

