**STATE of Minnesota, Appellant,**

**v.**

**James Scott SCAIFE, Respondent.**

**No. C5–99–1769.**

Court of Appeals of Minnesota.

March 14, 2000.

Review Denied May 16, 2000.

Mike Hatch, Attorney General, St. Paul, and Michael E. Molenda, Apple Valley City Attorney, for appellant.

John M. Stuart, State Public Defender, Leslie Joan Rosenberg, Assistant State Public Defender, Minneapolis, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, CRIPPEN, Judge, and FOLEY, Judge.*

## OPINION

TOUSSAINT, Chief Judge.

Appellant State of Minnesota challenges the trial court's imposition of a stay of adjudication. Because the required special circumstances for such a stay did not exist, we reverse.

### FACTS

Respondent James Scaife's driving privileges were cancelled in April 1997, apparently due to a driving while intoxicated (DWI) approximately 15 to 20 years ago in Wisconsin. In September 1997, Scaife was stopped for driving after cancellation. Scaife failed to appear at his initial pretrial date, a warrant was issued and executed, and Scaife then appeared on August 16, 1999, for a jury trial in Dakota County. Scaife had three prior driving after withdrawal (DAW) convictions, but had maintained a current driver's license since 1998. Scaife stated that if he went to jail or lost his driver's license, he would lose his construction job. The trial court accepted Scaife's guilty plea, sentenced him to serve 4 days in the Dakota County Jail with credit for time served, 16 days of electronic home monitoring with work release privileges, one year of probation, a fine of $390, and stayed adjudication over the prosecution's objection.

### ISSUE

Did the trial court act within its authority by staying adjudication in this case?

### ANALYSIS

While "a prosecutor has broad discretion in the exercise of the charging function," *State v. Foss*, 556 N.W.2d 540, 540 (Minn.1996), stays of adjudication are within a trial court's "inherent judicial power" and are appropriate in "special circumstances." *State v. Krotzer*, 548 N.W.2d 252, 254–55 (Minn.1996). The trial court's inherent judicial power to impose a stay of adjudication is to be used *"sparingly* and only for the purpose of avoiding an injustice resulting from the prosecutor's *clear abuse of discretion* in the exercise of the charging function." *Foss*, 556 N.W.2d at 541 (emphasis in original).

It is evident the trial court, in deciding upon a stay of adjudication, relied upon Scaife's statement that he needed his driver's license in order to work. The possibility that a defendant might lose a job as a result of a conviction is not a "special circumstance" justifying a stay of adjudication over the prosecutor's objection. *See State v. Twiss*, 570 N.W.2d 487, 487 (Minn.1997) (holding that "possibility that defendant might lose job if convicted

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

of gross misdemeanor malicious punishment of a child was not a special circumstance"). The trial court's desire to prevent the collateral consequence of a loss of a driver's license "does not by itself constitute 'special circumstances' warranting a stay of adjudication." *State v. Thoma*, 569 N.W.2d 205, 209 (Minn.App.1997), *aff'd mem.* 571 N.W.2d 773 (Minn.1997). Whatever the reason for the cancellation of Scaife's driver's license, there is no evidence that the prosecutor has abused his discretion in charging respondent. And under Minnesota caselaw, the loss of a job and the loss of a driver's license are not sufficient "special circumstances" to justify a stay of adjudication over the prosecutor's objection. The trial court exceeded its authority in staying adjudication in this case.

## DECISION

The district court erred in staying adjudication based on Scaife's loss of his driver's license and subsequent possible loss of his employment, which did not constitute "special circumstances."

**Reversed.**

CRIPPEN, Judge (dissenting).

It first seems instructive, here and in other *Krotzer–Foss–Thoma* appeals, to ask why the appeal is initiated. As against the defendant, the state seeks what is unworthy to pursue, a pound of flesh. The trial court has already imposed substantial conditions upon the defendant, including incarceration, a fine, and supervision, that protect the interests of public safety. In fact, as is so often the case in these matters, the conditions are especially ample in light of the wrong that has been done by the defendant; it is undisputed in this matter that the defendant's lawlessness is mostly in failing to undo record-keeping errors associated with a wrongful act done over 15 years ago. Although nominally pursued in the interests of justice, this appeal is nothing more that the assertion by the prosecutor that the defendant

should suffer senselessly, that he should lose his job.

If for no other reason, these appeals should not succeed because they condone this prosecutorial pursuit, lending support for deformation of the office of public prosecutor into a function that is wholly foreign to the appropriate model for a democratic society. In this regard, it is compelling to keep before us remarkable words attributed to a giant of the profession, Hennepin County Attorney Floyd B. Olson, in 1930:

> As County Attorney, I've tried to be a minister of justice rather than a policeman. I do not believe that a prosecutor should always point with pride to the number of convictions he has secured. The administration of justice often means leniency and frequently it is to the best interests of society to put a wayward lad back with his home instead of in prison.

Sentiments like these may be out of sync with the aims of some modern prosecutors, but they are profoundly important to the system of government in which we live. Dishonor of the ideal reflects not its obsolescence but instead the bad judgment of another generation of practitioners.

Of course, there is more involved in these appeals than meanness directed at misdemeanants. The vision of the prosecutor is aimed differently, but toward a goal that is equally distasteful. The target is to diminish the authority of trial judges, to make them subservient to the will of the prosecution in the disposition of criminal cases. For good cause, students of American judicial administration have become convinced that the independence of the judiciary has suffered alarming erosion. A judiciary with a modicum of concern for its independence should not be sleeping through encroachments, thinly veiled as the pursuit of public safety, from another branch of government.

Can the courts be roused? It remains to be seen. The conditional stay of criminal proceedings is a historic element of

sound judicial discretion, certainly in Minnesota, and it was an unchallenged element of justice in Minnesota's courts until the last decade of the 20th century. It is disheartening to see the appellate decisions that have occurred on stays of proceedings, especially in misdemeanor cases, holdings that disregard history and tear down the structure of justice rather than strengthen it. It is even more discouraging to hear the resulting confident reports of some trial judges—acting in the good spirit of respect for appellate authority—who say that they will have nothing to do with stays of adjudication, acceding completely in that regard to the demands of the prosecutors who appear before them.

Because of these concerns about the role of the prosecutor and the function of the independent judiciary, the substance of the issue should no longer be determined without substantially greater deference to trial court discretion than is stated in *Foss.*

Equally as important, we should not agree to examine the trial court's exercise of discretion in this case. I am not convinced that *Thoma* is defensible. As Judge Randall has continuously and wisely said, the state's right of appeal can be no greater than the right of the parties to dispute a misdemeanor sentence or the right of the state to question a dismissal in the interests of justice. *State v. Prabhudail,* 602 N.W.2d 413, 415 (Minn.App.1999) (Randall, J., dissenting); *State v. Thoma,* 569 N.W.2d 205, 209 (Minn.App.1997) (Randall, J., dissenting). Stays for a later dismissal are dispositions of the case, sentencing decisions. They occur in lieu of a trial, almost always accompanying a plea of guilty, and they are not preliminary to a trial. They affect the prosecutor's judgment on sentencing but do not affect prosecutorial discretion to file charges. In my opinion, the characterization of these stays as pre-trial decisions is indefensible.

Judge Randall pleads with the Minnesota judiciary to defend what it has enjoyed, a "nationwide reputation for fairness and stability in its criminal justice system."

*Prabhudail,* 602 N.W.2d at 420. I support this position. Out of concern for our system and its fundamental elements, I respectfully dissent in the present case. The matter should be dismissed. Alternatively, on its substance, the decision below should be affirmed as part of the ordinary, just exercise of discretion by the trial court.