In the Matter of the WELFARE
OF J.J.P.

No. A11–1146.

Court of Appeals of Minnesota.

Jan. 23, 2012.

Jon Geffen, Arneson & Geffen, PLLC, Minneapolis, MN, for appellant J.J.P.

Lori A. Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Jean Burdorf, Assistant County Attorneys, Minneapolis, MN, for respondent Hennepin County.

Considered and decided by STAUBER, Presiding Judge; KLAPHAKE, Judge; and LARKIN, Judge.

## OPINION

LARKIN, Judge.

Appellant J.J.P. challenges the denial of his petition for expungement under Minn. Stat. § 260B.198, subd. 6. Appellant contends that an order for expungement of records held by executive-branch agencies is consistent with the plain language of section 260B.198, subdivision 6. Appellant also argues that the juvenile division of the district court abused its discretion by basing its denial on separation-of-powers principles that restrict the judiciary's inherent authority to grant an expungement and on chapter 609A, which governs the expungement of criminal records. In this case of first impression, we conclude that under

section 260B.198, subdivision 6, the district court may expunge records that are held by executive-branch agencies. We further conclude that in this case, the district court abused its discretion by denying expungement based on inapplicable statutes and principles, instead of the established principles that govern dispositional decision-making in juvenile-delinquency cases. We therefore reverse and remand.

## FACTS

Appellant J.J.P. is a licensed emergency medical technician (EMT) and has worked with an ambulance service provider since 2007. He also works as a firefighter. In addition, appellant is currently studying at a local college to become a paramedic. But appellant's educational and career paths have recently been impeded by his juvenile-delinquency history.

In 2002, when appellant was 17 years old, he entered the Town and Country Golf Course, which was closed, and attempted to remove several food and beverage items from the snack bar. Based on this conduct, the state filed a petition in the juvenile division of the district court, alleging that appellant was delinquent. Approximately two weeks later, the state filed a second allegation of delinquency against appellant, based on an unrelated shoplifting incident. Appellant admitted charges of burglary and theft and was adjudicated delinquent.

In 2007, appellant filed a pro se petition requesting expungement of his judicial-branch records. Appellant did not request expungement of records held by the Minnesota Department of Human Services (DHS). The district court granted appellant's petition for expungement, but limited its order to "[a]ll official records held

by the Fourth Judicial District Court—Juvenile Division, other than the non-public record retained by the Bureau of Criminal Apprehension."

On September 17, 2010, the DHS disqualified [1] appellant from completing his clinical coursework, stating that his juvenile record barred him from "any position allowing direct contact with, or access to, persons receiving services from programs licensed by the Department of Human Services and the Minnesota Department of Health, from programs serving children or youth licensed by the Department of Corrections, and from unlicensed Personal Care Provider Organizations." Appellant requested reconsideration of this decision. Appellant also petitioned the district court to expunge "all of BCA's records as well as those records held at the Minnesota Department of Health and the Minnesota Department of Human Services." Appellant requested expungement so he could continue his education.

After a hearing and briefing on appellant's request for expungement, the district court denied appellant's petition. This appeal follows.

## ISSUES

I. Does Minn.Stat. § 260B.198, subd. 6, allow the district court to order the expungement of records held by executive-branch agencies?

II. Do the separation-of-powers principles that otherwise restrict the judiciary's inherent authority to grant expungement apply when deciding whether to grant an expungement under Minn.Stat. § 260B.198, subd. 6?

---

1. DHS subsequently set aside appellant's disqualification "for a period not to exceed 12 months." The set-aside was based on a risk- of-harm assessment; essentially, DHS concluded that appellant presented a low risk of harm to the people whom he would serve.

III. Do Minn.Stat. §§ 609A.01–.03 govern a request for expungement under Minn.Stat. § 260B.198, subd. 6?

IV. Did the district court abuse its discretion in denying appellant's petition for expungement?

## ANALYSIS

■ This case concerns the district court's authority to grant a request for expungement under Minn.Stat. § 260B.198, subd. 6, and, more specifically, whether the district court may order expungement of records that are held by executive-branch agencies. "Statutory interpretation is a question of law, which this court reviews de novo." *State v. L.W.J.,* 717 N.W.2d 451, 455 (Minn.App.2006). But we review the district court's decision to grant or deny an expungement petition under an abuse-of-discretion standard. *State v. Davisson,* 624 N.W.2d 292, 296 (Minn.App.2001), *review denied* (Minn. May 15, 2001).

Appellant requested expungement under Minn.Stat. § 260B.198, subd. 6, which authorizes the judiciary to "expunge [an] adjudication of delinquency at any time that it deems advisable," except in circumstances inapplicable here.[2] Appellant argues that under section 260B.198, subdivision 6, the district court may expunge records held by executive-branch agencies. Appellant also argues that the district court erred by denying his expungement petition based on separation-of-powers principles that restrict the judiciary's inherent authority to grant an expungement and on chapter 609A, which governs the expungement of criminal records. We address each argument in turn.

### I.

■ We first address whether an expungement order under section 260B.198, subdivision 6, may apply to records held by executive-branch agencies. Appellant argues that the plain language of section 260B.198, subdivision 6, is consistent with an order for expungement of records held by the executive branch. Appellant's argument is persuasive: the unambiguous language of section 260B.198, subdivision 6, does not restrict the reach of an expungement order under the statute. And we view the legislature's failure to impose any limits on the expungement authority granted under section 260B.198, subdivision 6, in the context of its demonstrated ability to impose detailed procedural requirements and restrictions in other expungement statutes. *See* Minn.Stat. §§ 609A.01–.03. If the legislature intended to restrict the reach of an expungement order under section 260B.198, subdivision 6, it easily could have done so. And it is not appropriate for this court to read such restrictions into the statute. *See Asian Women United of Minn. v. Leiendecker,* 789 N.W.2d 688, 693 (Minn.App.2010) ("Courts are bound by the statutes as written and may not supply by construction that which the legislature purposefully omits or inadvertently overlooks." (quotation omitted)).

Because the language of section 260B.198, subdivision 6, is plain and unambiguous, we have "neither the need nor the permission to engage in statutory interpretation." *Mut. Serv. Cas. Ins. Co. v. League of Minn. Cities Ins. Trust,* 659 N.W.2d 755, 760 (Minn.2003). We nonetheless observe that rules of statutory interpretation support our decision. For example, in ascertaining legislative intent,

---

**2.** The statute does not authorize the district court to grant expungement when legal custody of the juvenile has been transferred to the commissioner of corrections. Minn.Stat. § 260B.198, subds. 1(4), 6 (2010).

courts presume that the legislature does not intend results that are "absurd, impossible of execution, or unreasonable." Minn.Stat. § 645.17 (2010). If we were to construe section 260B.198, subdivision 6, as inapplicable to records held by executive-branch agencies, juvenile delinquents could receive less expungement relief than some juveniles who are certified for prosecution as adults and criminally convicted.[3] But as discussed in section III, the legislature has authorized remedies for juveniles who violate criminal laws that are not available to similarly situated adults or certified juveniles. In light of this demonstrated intent to treat juvenile delinquents more favorably than individuals who are convicted of crimes, it would be absurd to construe section 260B.198, subdivision 6, as providing less relief than chapter 609A. We therefore hold that under Minn.Stat. § 260B.198, subd. 6, the juvenile court may expunge records held by executive-branch agencies.

## II.

■ A juvenile court may expunge records in two ways: under its inherent judicial authority or under statutory authority. *State v. S.L.H.*, 755 N.W.2d 271, 274 (Minn.2008). "The judiciary possesses inherent authority to expunge criminal records when expungement is necessary to prevent serious infringement of constitutional rights." *Id.* (quotation omitted). But this authority "extends only to [the judiciary's] unique judicial functions, and . . . courts must proceed cautiously in ex-

ercising that authority in order to respect the equally unique authority of the executive and legislative branches of the government over their constitutionally authorized functions." *Id.* at 276 (quotation omitted). The court may not "lightly use judicial authority to enforce or restrain acts which lie within the executive and legislative jurisdiction of another department of the state." *Id.* at 278 (quotation omitted). And "in light of the deference that courts are to afford the other branches of government, the judiciary should exercise restraint before invoking inherent expungement authority over records held outside the judicial branch where statutes require that some of the records be kept open to the public." *Id.* at 279.

■ Appellant argues that the district court erred by denying his expungement petition based on the separation-of-powers principles that restrict the judiciary's inherent authority to grant an expungement. Respondent Hennepin County counters that "when a request is made such as the one [a]ppellant . . . has made, it necessarily implicates separation of powers concerns." We disagree. An expungement pursuant to a grant of statutory authority does not raise a separation-of-powers conflict. *See M.L.A.*, 785 N.W.2d at 769 (Johnson, J., concurring specially) (explaining that "the expungement statute is a means of expunging records possessed by executive-branch offices without doing violence to the principle of separation of powers"). Statutory grants of expungement

---

**3.** Under chapter 609A, the district court may expunge the record of a juvenile who was criminally convicted after certification to district court. Minn.Stat. § 609A.02, subd. 2. Section 609A.03, subdivision 8, states that "[t]he court administrator shall send a copy of an expungement order to each agency and jurisdiction whose records are affected by the terms of the order," indicating that chapter 609A contemplates the expungement of rec-

ords held outside the judicial branch. *See State v. M.L.A.*, 785 N.W.2d 763, 769 (Minn. App.2010) (Johnson, J., concurring specially) ("In chapter 609A of the Minnesota Statutes, however, the legislature has set forth a detailed statutory scheme for the expungement of certain criminal records, including records possessed by executive-branch offices."), *review denied* (Minn. Sept. 21, 2010).

authority reflect "a policy decision by the lawmaking branches of our government" that records possessed by the executive branch may be expunged by court order in certain circumstances. *See id.* Thus, when the judiciary expunges records pursuant to statutory authority, it acts in accordance with the authority of the executive and legislative branches, and there is no separation-of-powers conflict. Although an expungement under section 260B.198, subdivision 6, may conflict with other legislation that requires executive-branch agencies, such as the DHS, to access and consider juvenile records for the purpose of completing background studies, *see* Minn.Stat. § 245C.08, subds. 1(a)(3), 4 (2010) (stating the circumstances in which the department must review juvenile court records), the legislature has authorized the judiciary to resolve this conflict in favor of nondisclosure: if the judiciary deems it advisable, it may expunge an adjudication of delinquency. *See* Minn.Stat. § 260B.198, subd. 6.

■ We therefore hold that because a request for statutory expungement does not present a separation-of-powers conflict, the separation-of-powers principles that otherwise restrict the judiciary's inherent authority to grant an expungement are inapplicable when determining a request for expungement under section 260B.198, subdivision 6.

### III.

■ Appellant also argues that the district court erred by denying his expungement petition based on Minn.Stat. §§ 609A.01–.03, which govern the expungement of criminal records. Respondent counters that chapter 609A should be used to determine whether to grant a request for expungement under section 260B.198, subdivision 6, arguing that chapter 609A "already applies to a ... juvenile filing a petition for expungement because [section] 609A.01 provides that 'this chapter provides the grounds and procedures for expungement of criminal procedures under [several statutes], *or other applicable law.*'" We are not persuaded.

Chapter 609A governs the expungement of "criminal records." *See* Minn.Stat. §§ 609A.01 ("This chapter provides the grounds and procedures for expungement of criminal records...."), .03, subds. 1 (providing that "[a]n individual who is the subject of a criminal record who is seeking the expungement of the record" shall file a petition and pay a fee), 5(a) (explaining that "expungement of a criminal record is an extraordinary remedy"). The use of the phrase "criminal record" is significant because the legislature has determined that "[n]o adjudication upon the status of any child in the jurisdiction of the juvenile court shall operate to impose any of the civil disabilities imposed by conviction, nor shall any child be deemed a criminal by reason of this adjudication, *nor shall this adjudication be deemed a conviction of crime,* except as otherwise provided in this section or section 260B.255." Minn.Stat. § 260B.245, subd. 1(a) (2010) (emphasis added). The legislature has also provided that "[a] violation of a state or local law or ordinance by a child before becoming 18 years of age is not a crime unless the juvenile court" certifies the matter for action under the laws and procedures controlling adult criminal violations, transfers a traffic matter to adult court, or convicts the child as an extended jurisdiction juvenile and subsequently executes the adult sentence. Minn.Stat. § 260B.255, subd. 1 (2010). Although respondent's brief repeatedly refers to appellant's delinquency adjudications as "criminal records," respondent does not offer support for this characterization, and it is at odds with the aforementioned statutes. A juvenile-delin-

quency adjudication does not result in a criminal conviction or a criminal record. And for this reason, chapter 609A does not govern a request for expungement under section 260B.198, subdivision 6.

Respondent urges this court to consider that section 260B.198, subdivision 6, provides too little guidance to district courts and that the better approach would be to establish standards governing its application. We recognize that there is no case-law interpreting section 260B.198, subdivision 6, and that the district court was in uncharted territory. But an expungement under section 260B.198, subdivision 6, is an authorized disposition in a delinquency case. *See* Minn.Stat. § 260B.198 (2010) (entitled "Dispositions; delinquent child" and governing dispositions in delinquency cases). And Minnesota's juvenile-delinquency jurisprudence is replete with standards and guidelines governing dispositional decision-making in juvenile-delinquency cases. *See, e.g.,* Minn. R. Juv. Delinq. P. 15.05, subd. 2(B) (referencing established principles of dispositions). Moreover, these established dispositional principles require consideration of public safety and thereby address the main concern that appears to underlie the district court's decision and respondent's arguments on appeal. *See* Minn. R. Juv. Delinq. P. 15.05, subd. 2(A)(1) (stating that a dispositional order shall explain why the order serves public safety and the best interests of the child). Thus, we conclude that the well-established principles that guide dispositional decision-making in juvenile-delinquency cases provide appropriate standards for decision-making under section 260B.198, subdivision 6.

Moreover, we observe that the creation of a separate juvenile-justice system was based on public policy and that the system is governed by laws that recognize the "unique characteristics and needs of chil-dren" and that are intended to "give children access to opportunities for personal and social growth." Minn.Stat. § 260B.001, subd. 2 (2010); *see In re Gault,* 387 U.S. 1, 14–17, 87 S.Ct. 1428, 1436–38, 18 L.Ed.2d 527 (1967) (discussing the juvenile court movement and the policies upon which it was based). Thus, the legislature has authorized remedies for juveniles who violate criminal laws that are not available to similarly situated adults. For example, the district court has statutory authority to stay an adjudication of delinquency, but it has no similar statutory authority in criminal cases. *Compare* Minn.Stat. § 260B.198, subd. 7 (providing the juvenile court discretion to "continue the case" without a delinquency adjudication under certain circumstances), *with State v. Scaife,* 608 N.W.2d 163, 164 (Minn. App.2000), ("A [district] court's inherent judicial authority to enter a stay of adjudication may be exercised only where there are special circumstances making it a clear abuse of discretion for the prosecution to charge the offense as it did." (quotation marks omitted)), *review denied* (Minn. May 16, 2000). Similarly, the district court's statutory authority to expunge a juvenile-delinquency adjudication is, for the most part, unrestricted, unlike the district court's statutory authority to expunge criminal records. *Compare* Minn.Stat. § 260B.198, subd. 6, *with* Minn.Stat. § 609A.02 (limiting the grounds for an expungement order). The legislature has even authorized expungement for juveniles who commit serious crimes, whose cases are certified for prosecution under the laws that govern adult criminal violations, and who are criminally convicted. *See* Minn.Stat. § 609A.02, subd. 2 (authorizing a petition for expungement by a juvenile who was certified and criminally convicted). This statutory relief is not available to a similarly situated adult. *See id.,* subd. 3 (authorizing a petition for expungement

so long as "all pending actions or proceedings were resolved in favor of the petitioner"). The favored statutory treatment of juveniles is evidence of the policy-based distinction between juvenile-delinquency and criminal proceedings that must be considered when deciding whether to grant expungement under section 260B.198, subdivision 6.

We therefore hold that when deciding whether to grant expungement under section 260B.198, subdivision 6, the district court must be guided by the principles that govern dispositional decision-making in juvenile-delinquency cases and not by chapter 609A.

### IV.

We now apply our holdings to the district court's decision in this case. The district court's analysis reflects the lack of precedent under section 260B.198, subdivision 6. For example, although the district court recognized that appellant requested expungement under the juvenile-disposition statute, the court's conclusions of law state that appellant "does not qualify for a statutory expungement under adult expungement law." Although the district court cited section 260B.245, subdivision 1(a), and stated that "[f]or the most part, juvenile court records are not criminal records," the court referred to appellant's delinquency adjudications as "criminal records" and to appellant's delinquency history as a "criminal history." And although the district court recognized the public policy supporting the creation of a separate juvenile-justice system, the court relied on analytical factors found in chapter 609A, the criminal expungement statute. Finally, although the district court stated

that "[r]estrictions on expungement of executive branch records do not apply to statutory expungements because they do not implicate a separation of powers conflict" and that the court could therefore "expunge executive branch records when it uses its statutory authority," the court nevertheless reasoned that "there is a presumption in favor of the other branches of government when there is a possible separation of powers conflict" and concluded that expunging appellant's "executive branch records would be in conflict with" legislation requiring the DHS and Minnesota Department of Health to perform background studies and to specifically review juvenile court records.[4]

The district court ultimately applied the standard for expungement under section 609A.03, which states,

expungement of a criminal record is an extraordinary remedy to be granted only upon clear and convincing evidence that it would yield a benefit to the petitioner commensurate with the disadvantages to the public and public safety of:

(1) sealing the record; and

(2) burdening the court and public authorities to issue, enforce, and monitor an expungement order.

Minn.Stat. § 609A.03, subd. 5(a).

The district court reasoned that:

[T]here is not clear and convincing evidence that sealing the record would yield a benefit to [appellant] commensurate with the disadvantages to the public and public safety of: (1) sealing the record; and (2) burdening the court and public authorities to issue, enforce, and monitor an expungement order.... The benefits of granting an expungement of

---

**4.** The district court also relied on factors that are used to determine whether to grant expungement under the judiciary's inherent authority. *See State v. N.G.K.,* 770 N.W.2d 177, 180 (Minn.App.2009) (stating that a court should consider five factors when deciding whether to grant expungement pursuant to its inherent authority).

executive records do not outweigh the potential detriment to society because it would conflict with other legislation and the legislature has created a set-aside remedy for [appellant].

For these reasons, the Court does not deem it advisable to grant [appellant's] expungement petition pursuant to Minnesota Statutes § 260B.198, subdivision 6.

 The district court's reasoning is troublesome in several respects. First, the court based its conclusion that it was not advisable to grant expungement under section 260B.198, subdivision 6, on appellant's failure to satisfy the expungement standard under section 609A.03, subdivision 5(a). But as discussed above, because appellant's juvenile-delinquency adjudications are not criminal convictions and do not result in criminal records, neither chapter 609A nor the clear and convincing evidence standard applies. Moreover, the conflict between an expungement order under section 260B.198, subdivision 6, and other legislation is not, in and of itself, a basis to deny relief. Although the legislature has directed certain executive-branch agencies to access and consider juvenile records when conducting background studies, it has also granted the judiciary authority to expunge those records. Thus, in exercising its discretion to grant an expungement under section 260B.198, subdivision 6, the district court must look beyond the statutory conflict and apply the principles that govern dispositional decision-making in juvenile-delinquency cases. Our last concern is that the district court's approach suggests that it gave inadequate weight to the policy-based distinction between juvenile-delinquency and criminal proceedings. This distinction must inform a district court's decision under section 260B.198, subdivision 6.

Once again, we recognize that the district court was without the benefit of precedent when making its decision in this case. And we understand its inclination to look to the statutes and precedent governing expungements in other circumstances for guidance, as well as its hesitancy to wholly disregard that authority. But for the reasons stated above, we conclude that the district court abused its discretion in analyzing appellant's request for expungement. *See Foster v. Foster,* 802 N.W.2d 755, 757 (Minn.App.2011) (recognizing that a district court abuses its discretion when it misapplies the law). We therefore reverse and remand.

## DECISION

Because the district court abused its discretion by relying on inapplicable statutes and principles instead of the established principles that govern dispositional decision-making in juvenile-delinquency cases, we reverse and remand for reconsideration of appellant's petition consistent with this opinion.